# **Cover Sheet**

RECEIVED IN
CHAMBERS OF

NOV 1 3 2023

RENÉE MARIE BUMB, U.S.D.J.

**Plaintiff:** Corey Marable

**Defendants:** Oak's Integrated Care

**Superior Court of New Jersey Law Division, Special Civil Part, Mercer County**

**Case No. (s)**

**Docket Number 1:22-cv-06108-RMB-EAP**

**Docket Number: 1:23-cv-026810RMB-EAP**

## Table of Contents

1. **Introduction**
2. **Why the Defendants previous submission should be ignored**
3. **Data Breach (intentional) and how it was executed**
4. **Notice of Eviction and Removal (The Defendants only way to win this case was to have me homeless and/or unable to respond to the Court in a timely manner)**
5. **The Defendants attempting to access my mother's account, through my personal laptop**
6. **Exhibits that contradict the Defendant's prior statements of my dates being "random" and a plethora of information to show you their state of mind, (look at the dates)**
7. **Additonal Information (awaiting subpoenas)**

INTRODUCTION

 Rule 1 of the Federal Rules of Civil Procedure (Federal Rules) indicates that all the federal rules should be interpreted and administered to secure—as much as is feasible—a "just, speedy, and inexpensive determination [in] every action" before the court. Dockets have become increasingly crowded while discovery has simultaneously become progressively more expensive, time consuming, and litigious. In an attempt to streamline the discovery process, and to ease the litigating parties' financial burden, and prevent disclosure of potentially embarrassing or financially damaging information, courts turn to protective orders. Federal courts have the ability to issue 26(c) protective orders— orders to prevent, prohibit, or limit disclosure or discovery—to protect a party from "**annoyance**, **embarrassment**, **oppression**, or **undue burden or expense**."

Since the 1980s, judges have taken a  J.D. Candidate 2015, Georgia State University College of Law. 1. Fed. R. Civ. P. 1. "The rules govern the procedure in all civil actions and proceedings in the United States district courts" but are not applicable to certain types of proceedings, including bankruptcy, citizenship, and proceedings involving a subpoena. Id.; Fed. R. Civ. P. 81. 2. 8B Charles Alan Wright et al., Federal Practice and Procedure § 2284 (3d ed. 1998). 3. See Jacqueline S. Guenego, Note, Trends in Protective Orders Under Federal Rule of Civil Procedure 26(c): Why Some Cases Fumble While Others Score, 60 Fordham L. Rev. 541, 571 (1991). 4. 1 Steven S. Gensler, Federal Rules of Civil Procedure: Rules and Commentary 615 (2014). "It is common for parties to try to streamline discovery by stipulating to discovery protections." Id. 5. See Guenego, supra note 3, at 548–49, 554–55, 571. 6. Fed. R. Civ. P. 26(c)(1) (noting that available methods include and are not limited to forbidding disclosure or discovery, specifying time or place, prescribing a specific discovery method, limiting the scope of discovery, or "requiring that a trade secret or . . . commercial information not be revealed or be revealed only in a specified way").

2. The Defendants filed their set of papers after the Honorable Judge Renee Marie Bumb clearly gave them a 21 day notice. Their set of papers was filed on September 22, 2023. This falls outside of the 21 day timeline. They are well aware of this, as they have tried to utilize this defense against me, however, they are the only party to file untimely, on 2 scenarios **[citations omitted, but can be viewed in the Defendants Motion to Dismiss]**.

This process has gone on for too long, and this Court is the latest to be involved in the Defendants schemes. They have engaged in the same tactics with the Department of Labor, Appeal Tribunal, and Board of Review. All have resulted in an extensive, unnecessary investigation, all done out of malice and cruelty.

If the Courts cannot see a reason for initiating Summary Judgement, please, move toward a speedy jury trial so we can conclude this process.

Respectfully,

Corey Marable





7:37
◄ Camera                                    .ıll LTE 🔋

‹           **July 6, 2021**              Edit
                4:54 PM



**This password has appeared in a data leak, which puts this account at high risk of compromise. You should change your password immediately.**

iPhone can create a strong password for you. Would you like to change your password for "ultipro.com"?

**Change Password on Website**

**Not Now**

chrome-extension://efaidnbmnnnibpcajpcglclefindmkaj/https://docs.informatica.com/...png



**10:33**                                    LTE

🔒 docs.informatica.com

≡   ULTIPRO CONNECTOR

The breach of data/ data leak, was done Intentionally. This is how they obtained my (PPI) information.

### Unable to view data from UltiPro.

You can perform the following actions to view data from UltiPro:

- Verify your host name.
- Verify the following configurations:
    - Customer API.
    - User API.
    - User name and password associated with your service account.

### Test connection fails when you connect to UltiPro.

When you use the HR, Payroll, Talent, and Benefits application module, you must verify the access permissions to the Employee Self-Service API.

**Related Topics**

Troubleshooting with UltiPro

---

📅  Updated November 08, 2022

⬇️  Download Guide

💬  Comments

---

**Resources**



**Informatica**
Documentation

English ▼    Log In │ Sign Up

Communities   Knowledge Center   Learn   Resources

Data Integration Connectors
Updated : November 2022

Data Integration Connectors                                    ▼

Search documentation

 Enterprise Application / UltiPro Connector / Introduction to UltiPro Connector / UltiPro Connector Overview

☰   ULTIPRO CONNECTOR

## UltiPro Connector Overview

You can use UltiPro Connector to securely read data from UltiPro and Time Management. Use Data Integration to migrate data that you read from UtilPro to other applications.

You can use the UltiPro connection in synchronization tasks, mappings, and mapping tasks. In a mapping, you can configure a Lookup transformation to represent an UltiPro object.

You can switch mappings to advanced mode to include transformations and functions that enable advanced functionality.

When you run a task, the agent uses the following APIs to access data based on the application module you specify in the UltiPro connection:

**Employee Self-Service**
Reads human resources, payroll, talent, and benefits data from UltiPro.

**UTM Odata Services**
Reads data from Time Management.

**Events**
Reads data specific to supported UltiPro events, such as the date and time events and the unique keys of the records associated with events.

**Related Topics**

Introduction to UltiPro Connector

0 COMMENTS

❶  We'd like to hear from you!   **Log in to comment.**

**RESIDENTIAL WARRANT OF REMOVAL**
(Una traducción al español comienza en la página 3)

Docket No.: MID LT 004668-23

Superior Court of New Jersey
Law Division, Special Civil Part
Landlord/Tenant Section MIDDLESEX County

NORTH BRUNSWICK MANOR LLC
Plaintiff(s) - Landlord(s)
- vs -
COREY MARABLE
Defendant(s) - Tenant(s)
1514 BIRCHWOOD COURT

56 PATERSON STREET, 3RD FLOOR P.O.
BOX 1146

NEW BRUNSWICK, NJ 08903-1146
Phone No. (732) 645-4300 ext. 88381

NORTH BRUNSWICK, NJ 08902-0000

WARRANT OF REMOVAL

To:   Name of Defendant
      COREY MARABLE

You are to vacate and remove all of your possessions from the above address within three business days after receiving this warrant. Do not count Saturday, Sunday and legal holidays in calculating the three days. If you do not move within three days, a Special Civil Part Court Officer will remove all persons from the property at any time between the hours of 8:30 a.m. and 4:30 p.m. on or after _____ (month) _____ (day), _____ (year), and will require the tenant to vacate the premises and permit the landlord to change the locks. You must leave with your property by 8:30 a.m. on 11/3/23 (date) unless you have an order from a judge allowing you to stay longer. Afterward, your possessions may be removed by the landlord, in accordance with N.J.S.A. 2A:18-72 *et seq*.

It is a crime for a tenant to damage or destroy a rental property to retaliate against a landlord. In addition to imposing criminal penalties, the court may require a tenant to pay for any damage.

You may be able to stop this warrant and remain in the property if you apply to the Special Civil Part Court for relief. You may apply for relief by delivering a written request to the Office of the Special Civil Part and to the landlord or landlord's attorney. **Your request must be received by the Office of the Special Civil Part within three days after this warrant was served or you may be locked out.** Before stopping this warrant, the court may include certain conditions, such as the payment of rent.

You can also file a motion under Rule 4:50-1 requesting that the judgment for possession be vacated (reversed) and the complaint dismissed, if you can show good reason such as mistake or excusable neglect, fraud, misrepresentation or other misconduct by an adverse party, newly discovered evidence or any other reason justifying relief from the judgment for possession.

If you were sued for nonpayment of rent only, you may be able to stop this warrant and remain in the property if you pay all rent due and owing plus proper costs up until the third business day following the eviction. The landlord must accept this payment and/or cooperate with a rental assistance program or charitable organization that has committed to pay the rent.



# How can I resolve the error "cannot execute binary file"?

PATH is an environment variable which contains a list of folders which the shell searches for programs. ls for example, usually refers to /bin/ls, and your shell finds it by going through the folders listed in PATH one-by-one until it finds it, or if it doesn't find it in any of them, it gives up.

# 3/13/2023

On 3/13/2023, someone with access to my personal laptop, attempted to obtain credentials from an AOL account, through my personal laptop. This attempt was denied, because my laptop and I, do not have a connection to AOL.

The Courts and I, have not had any electronic communications, so on 3/13/2023, I was obviously unaware of the Magistrate Judge, Elizabeth A. Pascal's response. I had not received the notice until 3/16/2013. But this brings further curiosity [not to me], as to whom as responsible for this.

"michaeljfaux" is me. That is my username.

"Coryarable$" is not me and was never created by me. The "$" is a "tell" in Oak's patterned practices.

(Exhibit __)

On 3/14/2023, my internet service was unable to be disconnected, unless an administrator entered a password to disconnect. My administrative credentials did not work. I was, and should have been the only administrator of my personal device and network. This was the first time in 8 years this had occurred...

On 3/15/2023, my internet services and TV services were disconnected by Optimum. I called them and inquired as to why it was not disconnected in December of 2012, when I informed them I was going to be discontinuing services. They could not provide me with an answer that I deemed legitimate, but later they would go on to state that my account was further compromised and should have been disconnected in December of 2022.


This has become more blatantly obvious than previously, and I have dedicated the last 18 months to proving facts that I am not legally required to [as result of Oak's Integrated Care's data breaches], but have multiple organizations that have been awaiting Subpoena's for over **1 year.**


In conclusion, the Defendants are simply **caught.**

I informed them of this while I was still employed, that they were **5 moves behind me in this chess game.** But since, I am 6-0 vs the Defendants, but still yet to receive any compensation on any Governmental agencies determinations, so, maybe I was wrong.


# Rich and Guilty vs  Oppressed and Innocent



Re: Mercer

**Nocera, Lisa**
To Stewart, Vivienne and You

Mar 1

Hi Corey,

Approval has been given for staff outside of Children's Residential to cover shifts at Mercer House during the program's current staffing crisis. Thank you for your willingness to work today. We appreciate your help.

Lisa

**Lisa Nocera, LCSW**
**Vice President**
**Oaks Integrated Care**
**770 Woodlane Road**
**Mt Holly, NJ 08060**
Lisa.Nocera@oaksintcare.org
c: 609-752-6462

Reply to All





6:43

Done          11 of 45

Mt Holly, NJ 08060
Lisa.Nocera@oaksintcare.org
c: 609-752-6462

**Nocera, Lisa**                Mar 1
To You and Stewart, Vivienne

It would be overtime on $14hr if you are already at 40 hours at your regular position.

**Lisa Nocera, LCSW**
**Vice President**
**Oaks Integrated Care**
**770 Woodlane Road**
**Mt Holly, NJ 08060**
Lisa.Nocera@oaksintcare.org
c: 609-752-6462

Reply to All



March 1, 2020



- Oaks will not take disciplinary action or remove an you from involvement with Oaks, if you report, in good faith, a concern, or a perceived violation of laws, regulations, or Oaks policies. Any employee who believes she/he has been retaliated against for making a report should contact the Compliance Officer.

- However, deliberately making a false accusation is a serious violation of Oaks policy and may lead to disciplinary action.

## Responsibility of Oaks Integrated Care

1. Upon receipt of a complaint, the Director of Compliance will initiate an investigation.

2. The Director of Compliance will fully investigate all concerns.

3. If any violations are identified, a remediation plan will be developed with the Executive Management Team.

### Final Thoughts

- Every Oaks Integrated Care employee has a responsibility to uphold the values, and standards of the company
- The full Code of Conduct and





T-Mobile
4:20 PM
question was referring to
something but for some reason
I don't see it now so what was
that you referring your question
to Corey
It's back now
The reason why I was asking if
you were driving 620 is
because if my memory is
correct I thought you had
mentioned a month ago that
you are driving 619 and 620.
Maybe I got it wrong?
Mon, Apr 4, 12:18 PM
620 has never been affiliated
with RIST
Wednesday 10:23 AM
iMessage

1:41



AA          🔒 netflix.com          ↻

**Apple iPhone 11 Pro**

New Jersey (US) –
2600:1001:b010:cb13:d83e:b8f6:1
329:4c16
Last Used: 7/13/22, 9:08:00 AM
GMT-5

New Jersey (US) –
2600:1001:b017:209d:1b5:2cd6:af
a4:42ec
Last Used: 4/25/22, 12:41:12 PM
GMT-5

Delaware (US) –
2600:1002:b115:cd6e:24e8:bf63:1
1fd:f09d
Last Used: 3/20/22, 9:17:41 PM
GMT-5

<   >         



Fraudulent card



Help with fraudulent account

**Shivangi Desai** <shivangi.desai@njcourts.gov>
to me

Shivangi Desai-Patel, J.D.
Court Services Officer I
NJ Superior Court Clerk's Office
Shivangi.desai@njcourts.gov

**Corey Marable**
Corey Confirmed

**Shivangi Desai**

Good Afternoon Mr. Marable,

I have elevated the matter to management. As I receive answers on who is investigating I will update you

Thank you

**7:03**   5G 92


211
**13 Messages**
**Thank you for submitt...**  ∧  ∨

**Found in Gmail Inbox**  📁


LP
From: **Legal - Data Privacy Practi...** ›
To: **Corey M** ›
Cc: **Legal - Data Privacy Practitio...** ›
Today, 2:41 PM

Mr. Marable,

I represent the support organization for RentPayment, to which you submitted that information. Please feel free to subpoena MRI for that information. At this time, we are unable to provide you the information you seek absent such a legal requirement.

Best,


**REAL ESTATE SOFTWARE**

**Nina Nager** | Assoc General Counsel
MRI Real Estate Software |United States

M +1 (216) 8256950
www.mrisoftware.com

*Conspiracy*

*Defendants claim to not see Relevance in my ethics complaint*

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1517991
**Inspection Date(s):** 03/05/2021 –
**Issuance Date:** 05/14/2021



**Citation and Notification of Penalty**

**Company Name: Oaks Integrated Care**
**Inspection Site:** 770 Woodlane Road, Mount Holly, NJ 08060

Citation 1 Item 1    Type of Violation: **Serious**

29 CFR OSH ACT of 1970 Section (5)(a)(1): The employer did not furnish employment and a place of employment which were free from recognized hazards that were causing or likely to cause death or serious physical harm to employees, in that employees were not protected from the hazard of contracting the virus, SARS-CoV-2 (severe acute respiratory syndrome coronavirus 2), the cause of the COVID-19 disease, which can cause death.

a) On 11/14/2020 and thereafter, the employer did not develop and implement timely and effective measures to mitigate the spread of SARS-CoV-2, the virus that causes Coronavirus Disease 2019 (COVID-19). Oaks Integrated Care failed to identify and isolate suspected COVID-19 consumers who resided in its group homes. As a result, Oaks staff working in group homes and day program facilities were exposed to COVID-19. Oaks did not accurately inform its staff who worked with suspected COVID-19 consumers or co-workers about their risk. These conditions allowed the perpetuation of an outbreak of COVID-19 at Oaks Integrated Care facilities. One employee at the Pat LeBon day program and one employee at the Bock Bay group home died from COVID.

Examples include but are not limited to:
* On and about 11/19/20, three symptomatic suspected-COVID consumers residing in the Turner Lane group home were not isolated. Two of these consumers attended the Pat LeBon day program facility. Employees in both facilities cared for these consumers while wearing only surgical masks. Seven employees working in these two facilities tested positive for COVID, and one died.

* Between 11/15/2020 and 12/5/2020, consumers who lived in other Oaks Integrated Care group homes, including the Evergreen Manor Group Home, R.I.S.E., Jerry Gavin House, the Martha's Boulevard Group Home, and the Marriott Drive Group Home also attended the Pat LeBon day program facility and tested positive for COVID. Employees working in these group homes cared for consumers while wearing only surgical masks.

* On and about 11/16/2021, three suspected-COVID consumers residing in the Marriott Drive group home were not isolated before receiving a positive COVID tests. One employee working in this group home tested positive for COVID.

* Between 1/12/2021 and 1/27/2021, three suspected-COVID consumers residing in the Bock Bay group home were not isolated. An employee working in this group home tested positive for COVID and died.

* Oaks Integrated Care did not isolate group home residents unless they had a fever of 100.4 or above or a

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1517991
**Inspection Date(s):** 03/05/2021 -
**Issuance Date:** 05/14/2021



## Citation and Notification of Penalty

**Company Name: Oaks Integrated Care**
**Inspection Site:** 770 Woodlane Road, Mount Holly, NJ 08060

positive test for COVID-19. Group home consumers who lived with and interacted with symptomatic suspected-COVID and confirmed-COVID consumers were not isolated.

ABATEMENT DOCUMENTATION AND ABATEMENT CERTIFICATION REQUIRED FOR THIS ITEM

Recognized feasible and acceptable methods to abate this hazard include, but are not limited to: 1)Implement an effective infection control program to identify and segregate consumers who have symptoms of COVID-19 and/or who have been in close contact with others who have symptoms of COVID-19; 2) Implement and enforce the use of face coverings (masks) over the nose and mouth for unvaccinated employees; 3) Establish a training program for all employees that covers recognizing the symptoms of COVID-19 in consumers and methods of minimizing and/or preventing exposure; 4) Notify employees about consumers exhibiting the signs and symptoms of COVID-19. Require employees to use infection control precautions while working with potentially COVID-positive consumers; 5) Implement contact tracing to ensure that employees who work near employees or consumers who have tested positive for COVID-19 and/or have developed symptoms of COVID-19, are informed, tested and temporarily excluded from the facility and encouraged to quarantine; 6) Follow NJ Division of Developmental Disabilities guidance for residential programs and day programs. See https://www.nj.gov/humanservices/ddd/documents/covid19-update-webinar-10-01-2020.pdf and https://www.nj.gov/humanservices/ddd/documents/covid19-residential-and-day-program-screening-policy.pdf; 7) Follow CDC guidance for group homes and caregivers for individuals with disabilities. See https://www.cdc.gov/coronavirus/2019-ncov/community/group-homes.html and https://www.cdc.gov/coronavirus/2019-ncov/hcp/developmental-behavioral-disorders.html

### ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:     June 10, 2021
Proposed Penalty:     $13,653.00

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1517991
**Inspection Date(s):** 03/05/2021 -
**Issuance Date:** 05/14/2021



## Citation and Notification of Penalty

**Company Name: Oaks Integrated Care**
**Inspection Site:** 770 Woodlane Road, Mount Holly, NJ 08060

The alleged violations below have been grouped because they involve similar or related hazards that may increase the potential for injury or illness.

Citation 1 Item 2 a   Type of Violation: **Serious**

29 CFR 1910.134(c)(1): A written respiratory protection program that included the provisions in 29 CFR 1910.134(c)(1)(i) - (ix) with worksite-specific procedures was not established and implemented for required respirator use:

Oaks Integrated Care Imapct House:
(a) On and after 11/14/2020, the employer did not develop and implement a written respiratory protection program with worksite specific procedures for respirator use that included all the provisions of 29 CFR 1910.134(c)(1)(I)-(ix). Employees provided care to suspect and confirmed COVID-19 positive consumers.

ABATEMENT CERTIFICATION AND ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:                    June 10, 2021
Proposed Penalty:                                          $13,653.00

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                    Page 8                                    OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1517991
**Inspection Date(s):** 03/05/2021 -
**Issuance Date:** 05/14/2021



**Citation and Notification of Penalty**

**Company Name: Oaks Integrated Care**
**Inspection Site:** 770 Woodlane Road, Mount Holly, NJ 08060

---

Citation 1 Item 2 b   Type of Violation: **Serious**

29 CFR 1910.134(d)(1)(ii): The employer did not select and use a NIOSH-certified respirator in compliance with the conditions of its certification:

Oaks Integrated Care Impact House:
(a) On and after 11/14/2020, the employer did not provide NIOSH-certified respirators to employees who provided care to suspect and confirmed COVID-19 positive consumers. The employer provided and required employees to wear respirators labeled KN95. Some were labeled Powecom KN95 personal respirator, Earloop Style, GB2626-2006. These KN95s did not contain certification markings indicating that they were certified under an equivalent international standard.

ABATEMENT CERTIFICATION AND ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Abatement Note: Ear-looped KN95 respirators must not be used when respiratory protection is required such as tending to consumers suspected of COVID-19 unless the employer an demonstrate a proper fit is achieved on multiple employees with varied facial structures. Fit testing must be conducted with the KN95 ear-looped design to ensure an appropriate fit and seals consistently to the users' face.

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:                                  June 10, 2021
Proposed Penalty:                                                              $0.00

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1517991
**Inspection Date(s):** 03/05/2021 -
**Issuance Date:** 05/14/2021



**Citation and Notification of Penalty**

**Company Name: Oaks Integrated Care**
**Inspection Site:** 770 Woodlane Road, Mount Holly, NJ 08060

Citation 1 Item 2 c   Type of Violation: **Serious**

29 CFR 1910.134(e)(1): The employer did not provide a medical evaluation to determine the employee's ability to use a respirator, before the employee was fit tested or required to use the respirator in the workplace:

a) Oaks Integrated Care Impact House:
On and after 11/14/2020, the employer did not provide a medical evaluation to determine each employee's ability to use a respirator before requiring their use. The employer required employees to wear respirators while providing care to suspected and confirmed COVID positive consumers.

ABATEMENT CERTIFICATION AND ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:                          June 10, 2021
Proposed Penalty:                                                $0.00

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                    Page 10                         OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1517991
**Inspection Date(s):** 03/05/2021 -
**Issuance Date:** 05/14/2021



**Citation and Notification of Penalty**

**Company Name: Oaks Integrated Care**
**Inspection Site:** 770 Woodlane Road, Mount Holly, NJ 08060

---

Citation 1 Item 2 d   Type of Violation: **Serious**

29 CFR 1910.134(f)(2): Employee(s) using tight-fitting facepiece respirators were not fit tested prior to initial use of the respirator or annually re-fitted:

Oaks Integrated Care Impact House:
(a) On and after 11/14/2020, the employer did not provide a fit test to all employees required to wear respirators. The employer provided employees with 3M N95 filtering facepiece respirators and KN95 Earloop filtering facepiece respirators to protect against the SARS-CoV-2 virus while providing care to to suspected and confirmed COVID positive consumers.

ABATEMENT CERTIFICATION AND ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:                    June 10, 2021
Proposed Penalty:                                                              $0.00

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

Citation and Notification of Penalty                          Page 11                          OSHA-2

**U.S. Department of Labor**
Occupational Safety and Health Administration

**Inspection Number:** 1517991
**Inspection Date(s):** 03/05/2021 -
**Issuance Date:** 05/14/2021



### Citation and Notification of Penalty

**Company Name: Oaks Integrated Care**
**Inspection Site:** 770 Woodlane Road, Mount Holly, NJ 08060

Citation 1 Item 2 e   Type of Violation: **Serious**

29 CFR 1910.134(k)(3): Training was not provided prior to requiring employees to use a respirator in the workplace:

(a) Oaks Integrated Care Impact House:
On and after 11/14/2020, the employer did not provide employees required to wear 3M N95 and KN95 Earloop respirators to protect against exposure to the SARS-CoV-2 virus with effective training in the use, cleaning, and storage of a respirator, before requiring their use.

ABATEMENT CERTIFICATION AND ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

### ABATEMENT DOCUMENTATION REQUIRED FOR THIS ITEM

Date By Which Violation Must be Abated:
Proposed Penalty:

June 10, 2021
$0.00

for   *Danielle DiGironimo*

**Paula Dixon-Roderick**
Area Director

See pages 1 through 4 of this Citation and Notification of Penalty for information on employer and employee rights and responsibilities.

**U.S. Department of Labor**
Occupational Safety and Health Administration
701 Route 73 South
Building 2, Suite 120
Marlton, NJ 08053



# INVOICE /
# DEBT COLLECTION NOTICE

**Company Name: Oaks Integrated Care**
**Inspection Site: 770 Woodlane Road, Mount Holly, NJ 08060**
**Issuance Date: 05/14/2021**

**Summary of Penalties for Inspection Number:**      1517991

| | |
|---|---|
| Citation 1 Item 1, Serious | $13,653.00 |
| Citation 1 Item 2a, Serious | $13,653.00 |
| Citation 1 Item 2b, Serious | $0.00 |
| Citation 1 Item 2c, Serious | $0.00 |
| Citation 1 Item 2d, Serious | $0.00 |
| Citation 1 Item 2e, Serious | $0.00 |

### TOTAL PROPOSED PENALTIES:                                                    $27,306.00

To avoid additional charges, please remit payment promptly to this Area Office for the total amount of the uncontested penalties summarized above. Make your check or money order payable to: "DOL-OSHA". Please indicate OSHA's Inspection Number (indicated above) on the remittance. You can also make your payment electronically at www.pay.gov. At the top of the pay.gov homepage, type "OSHA" in the Search field and select Search. From the **OSHA Penalty Payment Form** search result, select Continue. The direct link is: https://www.pay.gov/paygov/forms/formInstance.html?agencyFormId=53090334. You will be required to enter your inspection number when making the payment. Payments can be made by credit card or Automated Clearing House (ACH) using your banking information. Payments of $25,000 or more require a Transaction ID, and also must be paid using ACH. If you require a Transaction ID, please contact the OSHA Debt Collection Team at (202) 693-2170.

OSHA does not agree to any restrictions or conditions or endorsements put on any check, money order, or electronic payment for less than the full amount due, and will cash the check or money order as if these restrictions or conditions do not exist.

If a personal check is issued, it will be converted into an electronic fund transfer (EFT). This means that our bank will copy your check and use the account information on it to electronically debit your account for the amount of the check. The debit from your account will then usually occur within 24 hours and will be shown on your regular account statement. You will not receive your original check back. The bank will destroy your

original check, but will keep a copy of it. If the EFT cannot be completed because of insufficient funds or closed account, the bank will attempt to make the transfer up to two times.

Pursuant to the Debt Collection Act of 1982 (Public Law 97-365) and regulations of the U.S. Department of Labor (29 CFR Part 20), the Occupational Safety and Health Administration is required to assess interest, delinquent charges, and administrative costs for the collection of delinquent penalty debts for violations of the Occupational Safety and Health Act.

**Interest**: Interest charges will be assessed at an annual rate determined by the Secretary of the Treasury on all penalty debt amounts not paid within one month (30 calendar days) of the date on which the debt amount becomes due and payable (penalty due date). The current interest rate is one percent (1%). Interest will accrue from the date on which the penalty amounts (as proposed or adjusted) become a final order of the Occupational Safety and Health Review Commission (that is, 15 working days from your receipt of the Citation and Notification of Penalty), unless you file a notice of contest. Interest charges will be waived if the full amount owed is paid within 30 calendar days of the final order.

**Delinquent Charges**: A debt is considered delinquent if it has not been paid within one month (30 calendar days) of the penalty due date or if a satisfactory payment arrangement has not been made. If the debt remains delinquent for more than 90 calendar days, a delinquent charge of six percent (6%) per annum will be assessed accruing from the date that the debt became delinquent.

**Administrative Costs**: Agencies of the Department of Labor are required to assess additional charges for the recovery of delinquent debts. These additional charges are administrative costs incurred by the Agency in its attempt to collect an unpaid debt. Administrative costs will be assessed for demand letters sent in an attempt to collect the unpaid debt.

for *Danielle DiGironimo*

**Paula Dixon-Roderick**

Area Director

5/14/2021

Date

Can the Courts email this over to the Defendants? I don't see a need to waste $6+ dollars in sending information that the Defendants are just going to lie about the date they received it. This way, they would have to (once again) lie to the Courts and I won't have to continuously prove myself.


Appreciation,


Corey Marable

# Rule 8.4: Misconduct

**It is professional misconduct for a lawyer to:**

(a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;

(c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d) engage in conduct that is prejudicial to the administration of justice;

(e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law;

(f) knowingly assist a judge or judicial officer in conduct that is a violation of applicable rules of judicial conduct or other law; or

(g) engage in conduct that the lawyer knows or reasonably should know is harassment or discrimination on the basis of race, sex, religion, national origin, ethnicity, disability, age, sexual orientation, gender identity, marital status or socioeconomic status in conduct related to the practice of law. This paragraph does not limit the ability of a lawyer to accept, decline or withdraw from a representation in accordance with Rule 1.16. This paragraph does not preclude legitimate advice or advocacy consistent with these Rules.

---

(**a - f**) The Defendants are in violation of, based on previous filings. I doubt they will object to any of that. If they choose to, I will go into great detail, and further expose more of their unlawful acts.

**(g)** As I previously stated to the Courts, the Defendants frivolously contested by Unemployment benefits, [twice]. The first contest was immediately after they terminated me, solely to ensure I had no income for the foreseeable future. This was done, even though they knew I no health insurance under Oak's and they have withheld monies owed to me as well as personal items at my desk.

Upon investigation from the Department of Labor, The Appeal Tribunal, and the Board of Review, it took a 13 month investigation to determine that I did not commit any fraud in 2020, whilst I was unemployed and not working.

This contest, which had me being investigated for committing fraud against the United States Government, disqualified me for a Government position that I was recommended to in February of 2023. This was the last adequate position I reasonably would have obtained. Since, I have been unemployed for 16+ months, which was their intended goal.

Not only should they be sanctioned, but they should not be able to put forth any defenses because it is solely to hinder my ability to present my case.

They Defendants have had 579 days to present their best defense, and you have already heard their best 4 arguments.

Simply put, the Defendants have no defense.

How did this case go from me being told, by a Court Clerk, that the Clark. F. Fischer Building (Broad Street., Trenton, NJ Mercer County), was the appropriate Court to file it in, to now being in Camden County? I am just curious.


Respectfully


C.D.M

**FROM:**

Corey Marable
1514 Birchwood Court
North Brunswick, NJ 08902

RECEIVED

NOV 13 2023

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

RECEIVED

NOV 13 2023

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

**TO:**

Hon. Renée M. Bumb, U.S.D.J.
Mitchell H. Cohen Building and Courthouse
4th and Cooper Streets
Courtroom 3D
Camden, NJ 08101

RECEIVED

NOV 13 2023

AT 8:30 _____ M
CLERK, U.S. DISTRICT COURT - DNJ

Retail  

08101

RDC 99

U.S. POSTAGE PAID
FCM LG ENV
NORTH BRUNSWICK
NJ 08902
NOV 09, 2023
$3.51
R2304W120539-10

**Utility Mailer**