[Docket No. 23]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| COREY D. MARABLE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>OAKS INTEGRATED CARE, INC.,<br><br>　　　　Defendant. | Civil Nos.:<br><br>22-cv-6168 (RMB-EAP) (LEAD)<br><br>23-cv-2681 (RMB-EAP) (CONSOL.)<br><br>**OPINION** |

**APPEARANCES**

Corey D. Marable
1514 Birchwood Court
North Brunswick, NJ 08902

　　*Pro se Plaintiff*

CAPEHARD & SCATCHARD, P.A.
Sanmathi Dev, Esq.
Geoffrey N. Stark, Esq.
8000 Midlantic Drive, Suite 300S
Mount Laurel, N.J. 08054

　　*Attorneys for Defendant Oaks Integrated Care, Inc.*

**RENÉE MARIE BUMB, Chief United States District Judge**

　　This matter comes before the Court on an Amended Motion to Dismiss ("**Motion**") filed by Defendant Oaks Integrated Care, Inc. ("**Defendant**" or "**Oaks**") pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff Corey Marable untimely opposed the Motion. Defendant submitted a reply brief in further support of its

Amended Motion to Dismiss. Pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b), the Court did not hear oral argument. For the reasons set forth below, Defendant's Amended Motion to Dismiss is **GRANTED**.

I.   FACTUAL AND PROCEDURAL BACKGROUND

This is a consolidated action for violations of federal civil rights and labor laws, state civil rights, labor laws, and computer-related offenses stemming from Plaintiff's termination from Oaks, an assisted living facility. [*See Marable v. Oaks Integrated Care*, No. 22-cv-6168 ("**Lead Docket**") at Docket No. 1-5 ("**Lead Compl**."); *Marable v. Oaks Integrated Care*, No. 23-cv-2681 ("**Consol. Docket**") at Docket No. 1 ("**Consol. Compl**.")]. Plaintiff initially filed this case in October 2022. [Lead Docket No. 1.] The civil cover sheet to the complaint asserts violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, New Jersey's Law Against Discrimination, N.J.S.A. 10:5-1 *et. seq.* ("**NJLAD**"), and section 2A:38A-3 of New Jersey's Computer Related Offenses Act ("**NJCROA**"), which prohibits unlawfully accessing, altering, damaging, taking, or destroying data/computer information. [*See* Lead Docket No. 1-1.] Plaintiff also makes claims that Oaks failed to pay him overtime which the Court construes as a claim under the Fair Labor Standards Act ("**FLSA**"), 29 U.S.C. § 203 *et seq.*

Plaintiff's lead complaint alleges that he suffered discrimination while working for Oaks' Residential Intensive Support Team ("**RIST**") between December 2019 and August 2022. The allegations are not very clear, but they appear to include that Plaintiff was (i) not paid for overtime work even though he disclaims working overtime

hours, [Lead Compl. ¶¶ 2–3, 5]; (ii) denied shifts or replaced on shifts without notice, [*id.* ¶ 3]; (iii) inaccurately ranked as one of the least productive employees by Oaks' human resources department, [*id.* ¶¶ 4, 6–7]; (iv) furloughed during the COVID-19 pandemic, [*id.* ¶ 8]; (v) offered only part-time work upon the conclusion of his furlough, [*id.* ¶ 9]; (vi) denied a bonus, [*id.* ¶ 10]; (vii) denied Election Day off work (one day after he was scheduled to return from furlough), [*id.* ¶ 14]; and (viii) was ultimately terminated, [*see id.* at 1]. Plaintiff alleges that he made a "complaint of discrimination" to Oaks related to some or all of these incidents and also filed a complaint with the Equal Employment Opportunity Commission ("**EEOC**"), [*id.* ¶ 12–13, 20].

Although Plaintiff does not explicitly say so, he appears to allege that these adverse actions were taken against him because he is an African American man. [*See, e.g.*, Lead Docket at 14-1 at 8 ("I would like to inform the courts of my protected class. I am an African American male."); *see also* Consol. Compl. ¶ 9 ("I then told my supervisor that I would be taking off the remainder of Black History Month…").] However, the only allegations in the lead complaint that appear to have anything to do with race are general and do not seem to have anything to do with the alleged adverse actions—Plaintiff took issue with Oaks' company statement following the death of George Floyd, [*id.* ¶ 16], and the fact that Oaks employees were only given five days to complete a "race-based survey" of over twenty questions "asking

employees if they feel as though they are treated differently due to their race," [*id.* ¶¶ 21–22].

Plaintiff also makes allegations of computer offenses somehow perpetrated against him by Oaks, including that he "received a crash report on [his] personal laptop … which stores no work-related data" and that his "personal privacy and information [were] compromised," [*id.* ¶¶ 24]. His second-filed complaint builds on his allegations of computer-related offenses against Oaks averring, among other things, that Oaks suffered a data breach which compromised the personal information of its employees, including bank information and social security numbers, and resulted in unauthorized uses of Plaintiff's personal Google and Netflix accounts by hackers. [Consol. Compl. ¶¶ 9, 11.]

The Court granted Plaintiff's application to proceed *in forma pauperis* and Oaks moved to dismiss the lead complaint on January 13, 2023. [Lead Docket No. 11]. Plaintiff did not file an opposition, but on May 10, 2023, opened a new action in this Court appearing to build on the allegations of the lead complaint, mostly related to his allegations of computer-related offenses against Oaks. [Consol. Docket No. 1.] The second-filed complaint also includes a variety of other allegations, notably, an incident that took place on May 19, 2022 after Plaintiff told Oaks that he would make Oaks "look like the Buffalo Tops shooter,"[1] for deaths of Oaks residents that Plaintiff claims

---

[1] The reference relates to the May 14, 2022 racially motivated mass shooting at a Tops grocery store in Buffalo, New York. *See* Jenna Zucker, *Gunman Kills 10 in Live-streamed Racial Attack at Supermarket in Buffalo*, Reuters (May 16, 2022),

4

Oaks was responsible for. [Consol. Compl. ¶¶ 17–18; *id.* at 21–22.] Plaintiff says his comments were "satire." [*Id.* ¶ 18.]

The Court again granted Plaintiff leave to proceed *in forma pauperis* with respect to the second-filed complaint and ordered the second-filed complaint to be docketed and consolidated with the lead case and for the Clerk of Court to close the second-filed case. [Consol. Docket No. 3; Lead Docket No. 16.] But because neither complaint clearly specified what claims or specific causes of action Plaintiff was attempting to bring against Oaks, the Court ordered Plaintiff to show cause by July 17, 2023 "by providing a succinct statement of his claims and the grounds upon which each claim rests." [Consol. Docket No. 3 at 5; Lead Docket No. 16 at 5.] Plaintiff failed to timely respond to the Court's order and the Court dismissed the case with prejudice indicating that it would only reopen the matter upon a showing of good cause by Plaintiff as to why he failed to respond to the Court's order and what causes of action he intended to bring. [Lead Docket No. 19.] Plaintiff eventually responded to the Court's order to show cause appearing to assert three causes of action: (i) racial discrimination under Title VII; (ii) violations of the NJCROA; (iii) and failure to pay overtime wages owed to Plaintiff under federal and state law based "on [Plaintiff's] hired salary." [Lead Docket No. 20-1.] After balancing the factors set forth in *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863 (3d Cir. 1984), the Court construed Plaintiff's pleadings as asserting claims under Title VII, NJCROA, and FLSA/state labor law for failure to pay

---

https://www.reuters.com/world/us/ten-killed-three-wounded-mass-shooting-grocery-store-buffalo-ny-2022-05-14/.

overtime, re-instated the action and discharged its order to show cause. [Lead Docket No. 22.][2] Defendant filed its Amended Motion to Dismiss on September 21, 2023.[3] Plaintiff untimely opposed, and Oaks submitted a reply brief in further support of its Motion. [*See* Docket Nos. 25–26.][4]

## II.   LEGAL STANDARD

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). It is well-settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*,

---

[2] The Court also construes Plaintiff's pleadings as asserting claims under NJLAD.
[3] Plaintiff argues that Oaks' Motion, which was due on September 21, 2023, was untimely because he personally received it by mail on September 22, 2023. [Docket No. 25 at 4.] Oaks' Motion, however, was electronically filed with the Court on September 21, 2023 making it timely.
[4] Despite the untimeliness of Plaintiff's opposition, the Court will not treat the Motion as unopposed given Plaintiff's *pro se* status. *See Granger v. Am. E-Title Corp.*, 2012 WL 12905806, at *3 (D.N.J. Mar. 19, 2012). In any event, the only real argument Plaintiff offers in opposition is that Oaks' Motion was untimely, which, as explained, above, *supra* n.3, it was not.

6

550 U.S. 544, 555 (2007) (*first citing Conley v. Gibson*, 355 U.S. 41, 47 (1957); *then citing Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994); *and then citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (alterations in original). Further, "to determine the sufficiency of a complaint," the Court must follow a three-step process:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 664, 675, 679 (2009) (alterations in original)). A district court may "generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (*citing Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (*quoting Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)); *see also Iqbal*, 556 U.S. at 684 ("Our decision in *Twombly* expounded the pleading standard for 'all civil actions' . . . ."); *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) ("*Iqbal* . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before *Twombly*."). Thus, "[a] motion to

7

dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" *Malleus*, 641 F.3d at 563 (*quoting Twombly*, 550 U.S. at 570).

*Pro se* complaints are to be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Although *pro se* pleadings are to be liberally construed, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Owens v. Armstrong*, 171 F.Supp.3d 316, 328 (D.N.J. 2016) (quoting *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013)). Thus, *pro se* litigants are not exempt from complying with federal pleading standards. *See Thakar v. Tan*, 372 F.App'x 325, 328 (3d Cir. 2010).

## III. DISCUSSION[5]

### A. Plaintiff Has Failed to State a Title VII Discrimination Claim

Title VII prohibits employment discrimination because of race, color, religion, sex, or national origin. Courts review employment discrimination cases using the burden-shifting framework outlined in *McDonnell Douglas Corp. v Green*, 411 U.S. 792 (1973). To state a *prima facie* case of employment discrimination, a plaintiff must show

---

[5] Plaintiff has appended a host of evidence outside of the pleadings to his motion to dismiss opposition, [Lead Docket No. 25], and two unauthorized supplemental submissions in further opposition to Defendant's Motion, [Lead Docket No. 28; Consol. Docket No. 7]. The Court will not consider any of this outside evidence on a motion to dismiss. FED R. CIV. P. 12(d); 5C FED. PRAC. & PROC. CIV. § 1366 (3d ed.) (federal courts have complete discretion to reject submissions outside of the pleadings) (collecting cases).

8

(1) membership in a protected class; (2) qualification for the position in question; (3) an adverse employment action; and (4) that the adverse employment action gives rise to an inference of unlawful discrimination. *Castleberry v. STI Grp.*, 863 F.3d 259, 263 (3d Cir. 2017).[6] At the motion to dismiss stage, "a plaintiff must plead facts that would make his *prima facia* case under the *McDonnell Douglas* framework plausible." *Caviness v. Aramark Corr. Servs., LLC*, 2015 WL 1888246, at *2 (D.N.J. Apr. 15, 2015).

As an initial matter, neither complaint affirmatively alleges that Plaintiff is a member of a protected class. Reading both pleadings liberally, however, seems to suggest that Plaintiff is an African American man and is alleging racial discrimination on account of his race. [Consol. Compl. ¶ 9 ("I then told my supervisor that I would be taking off the remainder of Black History Month…"); *see also* Lead Docket at 14-1 at 8 ("I would like to inform the courts of my protected class. I am an African American male.").] In any event, Oaks does not challenge Plaintiff's membership in a protected class—it argues instead that even if Plaintiff sufficiently alleged the first three *McDonnell Douglas* factors, he fails to allege sufficient facts to show that Oaks took adverse employment action against him because of his race. [Docket No. 23-1 at 13.]

The Court agrees. Plaintiff's allegations amount to a list of various grievances against various Oaks supervisors. Plaintiff fails to plead any facts showing that any

---

[6] If a plaintiff can make out a *prima facie* case, the "burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the adverse employment action. *See McDonnell Douglas*, 411 U.S. at 802–04. The burden then shifts a final time with the plaintiff bearing the burden of establishing that the employer's stated reason for the adverse action was pretextual. *Id.*

9

adverse actions taken against him were taken because of his race. Other than mere conclusory statements, there are no allegations of any statement or action which could conceivably support a claim of "overt or explicit" racial animus, or "reflect discriminatory bias." *Kumar, v. New Jersey*, 2021 WL 3769280, at *7 (D.N.J. Aug. 25, 2021) (quoting *Ke v. Drexel Univ.*, 2015 WL 5316492, at *12 (E.D. Pa. Sept. 4, 2015)). The only allegations in either pleading that even remotely touch the subject of race concern (i) Plaintiff's dissatisfaction with Oaks' response to the killing of George Floyd, [Lead Compl. ¶ 16]; (ii) Oaks apparently only giving employees five days to complete a survey asking employees whether they "feel as though they are treated differently due to their race," [*id.* ¶¶ 21–22]; and (iii) Plaintiff charging Oaks with generalized and unspecific episodes of racial harassment, [*see, e.g.*, Consol. Compl. ¶ 9.] But these allegations either do not have anything to do with Plaintiff personally or are otherwise too vague, conclusory, and unattenuated to the alleged adverse actions to support an inference of discrimination sufficient to survive a motion to dismiss. *Jean-Pierre v. Schwers*, 682 F. App'x 145 (3d Cir. 2017) (affirming dismissal of *pro se* plaintiff's complaint for failure to plead facts that would plausibly support inference of racial discrimination); *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008) ("The plausibility paradigm announced in *Twombly* applies with equal force to analyzing the adequacy of claims of employment discrimination.").

In the alternative, even if Plaintiff could plausibly allege a *prima facie* claim of racial discrimination, his Title VII claims must still be dismissed because they were filed more than ninety days following his receipt of a right-to-sue letter from the

EEOC. *See* 42 U.S.C. § 2000e-5(f)(1) ("[W]ithin ninety days after the giving of such notice a civil action may be brought against the respondent named in the [EEOC] charge . . . by the person claiming to be aggrieved . . . by the alleged unlawful employment practice"). "While the 90–day rule is not a jurisdictional predicate … the court cannot extend the limitations period by even one day" absent reasons to equitably toll the ninety-day period. *Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 (3d Cir. 1986). Equitable tolling to extend the ninety-day right-to-sue window should only be applied "sparingly," usually where "the defendant has actively misled the plaintiff; when the plaintiff in some extraordinary way was prevented from asserting [his] rights; or when the plaintiff timely asserted [his] rights in the wrong forum." *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999). A plaintiff bears the burden of proving that equitable tolling applies. *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 591 (3d Cir. 2005), *abrogated on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018).

Attached to Plaintiff's complaints are two right-to-sue letters from the EEOC, one dated July 19, 2022 appended to the lead complaint ("**First Charge Letter**"), [Lead Docket No. 1-4 at 2], and another dated February 3, 2023 appended to the second-filed and later consolidated complaint ("**Second Charge Letter**"), [Consol. Docket No. 1 at 7].[7] The First Charge Letter was carbon copied to an email address

---

[7] The Court assumes that the First Charge Letter relates to the allegations in the lead complaint and the Second Charge Letter relates to the allegations in the consolidated complaint.

11

provided by Plaintiff. [Lead Docket No. 1-4 at 2–3.] It is unclear whether the Second Charge Letter was emailed or mailed to Plaintiff. Courts in this Circuit have found that a right-to-sue letter received via email triggers the ninety-day statute of limitations period as soon as it hits a plaintiff's email inbox. *Paniconi v. Abington Hosp. Jefferson Health*, 604 F. Supp. 3d 290, 293 (E.D. Pa. 2022); *Moses v. Home Depot Inc.*, 2017 WL 2784710, at *7 (D.N.J. June 27, 2017) (ninety-day right-to-sue period began to run when email notification reached *pro se* plaintiff's inbox). When an EEOC right-to-sue letter is mailed, courts will presume an employee received it three days after it was mailed. *Seitzinger*, 165 F.3d at 239; *see also Paniconi*, 604 F. Supp. 3d at 293 (declining to presume a grace-period for right-to-sue letter received via email).

Because the EEOC appears to have emailed the First Charge Letter to Plaintiff on the same day it was signed, July 19, 2022, [*see* Docket No. 1-4 at 2–3], Plaintiff had to file his Title VII claims related to the First Charge Letter, at most, ninety days after July 19, 2022, *i.e.*, October 17, 2022. Because it is unclear whether the EEOC emailed or mailed the Second Charge Letter to Plaintiff, Plaintiff had to file any Title VII claims related to the Second Charge Letter—liberally assuming it was mailed to Plaintiff and applying the three-day mailing grace-period—at most, ninety days after February 6, 2023, *i.e.*, May 8, 2023.[8]

---

[8] May 7, 2023—a full ninety days after February 6, 2023—fell on a Sunday so under Federal Rule of Civil Procedure 6(a)(1)(C), the right-to-sue period was extended to the next day that was not a weekend or legal holiday, *i.e.*, Monday, May 8, 2023.

The Court received Plaintiff's lead complaint on October 18, 2022 and his second-filed complaint on May 10, 2023 making both complaints untimely by one and two days, respectively. Therefore, the Title VII allegations in both pleadings are untimely and, in the alternative, will be dismissed as such. *Moody v. Conroy*, 762 F. App'x 71, 73 (3d Cir. 2019) ("Under the Federal Rules of Civil Procedure, a pleading is filed when it is delivered to a clerk or to a judge who agrees to accept it for filing.") (citing FED. R. CIV. P. 5(d)(2)); *see also Mosel*, 789 F.2d at 253 (explaining that there is no additional period to file a complaint based on an EEOC right-to-sue letter to compensate for mailing time). And although it may seem harsh, a civil rights complaint filed even a day or two outside the ninety-day window should be dismissed absent reasons to equitably toll the ninety-day window. *Mosel*, 789 F.2d at 253. That is so even where, as here, the plaintiff is *pro se*. *See, e.g.*, *Williams v. Twp. of Lakewood*, 2020 WL 7391009, at *6 (D.N.J. Dec. 15, 2020) (former employee's *pro se* status could not be used to circumvent time requirements mandated by Title VII, even though his claim filed with EEOC was untimely by only two days); *Robinson v. Se. Pennsylvania Transp. Auth.*, 2002 WL 1870462 (E.D. Pa. Aug. 14, 2002) (same).

Plaintiff's opposition to the Motion fails to offer any justification why his Title VII claims are timely or why the right-to-sue deadlines should be equitably tolled. Attached as an exhibit to a June 7, 2023 letter filed by Oaks is a document which appears to be Plaintiff's opposition to Oaks' original motion to dismiss but which Plaintiff never filed with the Court. [Docket No. 14-1, Ex. A.] In that document, which appears to be an opposition to Oaks' original motion to dismiss, Plaintiff addresses

Oaks' arguments regarding the timeliness of his Title VII claims. He states that the First Charge Letter (he does not address the Second Charge Letter) was emailed to his mother "who checks her email very seldom[ly]" but who he nonetheless designated as his representative to receive electronic communications from the EEOC. [*Id.* at 10, 16.] Plaintiff appears to argue that because the First Charge Letter states that "receipt" is defined as the date when a claimant or his representative opens the right-to-sue letter and that he was only in receipt of the First Charge letter vis-à-vis his mother the week of July 31, 2022, his claims are either timely or should be equitably tolled. [*Id.* at 10.]

Even assuming these arguments were properly before the Court on Defendant's now Amended Motion to Dismiss (they are not), they cannot save the untimeliness of Plaintiff's Title VII claims. Again, courts in this Circuit have found that a right-to-sue letter received via email triggers the ninety-day statute of limitations period as soon as it hits the plaintiff's (or his representative's) email inbox. *Paniconi*, 604 F. Supp. 3d at 293 (ninety-day period began to run when email notification reached plaintiff's attorney's inbox and declining to presume any grace period between when an EEOC right-to-sue letter was dated and when it was received via email); *Moses*, 2017 WL 2784710, at *7 (citing *Zilinskas v. UPMC*, 2013 WL 2237726, at *4 (W.D. Pa. May 21, 2013)) (ninety-day period began to run when email notification reached *pro se* plaintiff's inbox).[9] Plaintiff designated his mother as his representative to receive

---

[9] But the email does actually have to hit the plaintiff's or his representative's inbox. In *Miller v. City Mission*, 2023 WL 9002732, at *4 (W.D. Pa. Dec. 28, 2023), the court calculated the ninety-day period beginning on the date on which the plaintiff learned of the right-to-sue letter upon opening it on the EEOC portal. But *Miller* is

14

electronic communications from the EEOC, and so, the ninety-day clock started to run as soon as that email hit his mother's inbox.

Plaintiff does not dispute that the EEOC sent the First Charge Letter to his mother's email on July 19, 2022, the day the EEOC signed the First Charge Letter, or that he relied on the First Charge Letter's representation that "[r]eceipt generally occurs on the date that you (or your representative) view this document" in filing his complaint. [*See* Docket No. 1-4 at 2; *see Jacobs v. Walmart Inc.*, 2023 WL 4532822, at *6 (D. Md. July 13, 2023) (equitably tolling complaint filed one day after expiration of ninety-day right-to-sue window because plaintiff alleged that she relied on EEOC's representation that she had ninety days to file suit from the date that she opened the right-to-sue letter sent via email); *but see Moses*, 2017 WL 2784710, at *6 ("An EEOC counselor providing false or misleading information to a plaintiff does not necessarily warrant equitable tolling.") (citing *Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) (declining to grant equitable tolling on the basis that allowing a Plaintiff's claim of being provided erroneous information in one phone conversation with the EEOC would convert the remedy from one used "only sparingly and in extraordinary situations into one that can be readily invoked by those who have missed carefully drawn deadlines")). Even if Plaintiff disputed the date the email hit his mother's inbox, "a delay solely caused by the inability to read an e-mail message is not an extraordinary

---

distinguishable because the plaintiff there adequately alleged that she never received the right-to-sue letter by email on the date it was apparently sent. Here, Plaintiff does not dispute that his representative—his mother—received the email on the date which the EEOC signed the right-to-sue letter.

15

circumstance that justifies equitable tolling." *Moses*, 2017 WL 2784710, at *7 (citing *Finch v. NYC Transit Auth.*, 2011 WL 2708308, at *3 (E.D.N.Y. July 8, 2011)). Plaintiff selected his mother as his representative knowing that she "seldom" "checks her email" making Plaintiff's delay in learning of the First Charge Letter an unfortunate, albeit self-inflicted, wound that cannot justify equitable tolling. Accordingly, the Court finds that both complaints were filed after ninety days and that there are no facts to support equitable tolling of the right-to-sue period.

### B. Plaintiff Has Failed to State a Claim for Denial of Overtime Pay Under the FSLA

To state a *prima facie* FLSA claim, a plaintiff must allege that (i) he was an "employee" as defined by the FLSA; (ii) the defendant was "engaged in commerce," as defined by the FLSA; and (iii) "plaintiff was not paid the federal minimum wage or was not paid overtime compensation for hours worked in excess of forty in a given week." *Perez v. Express Scripts, Inc.*, 2020 WL 7654305, at *2 (D.N.J. Dec. 23, 2020) (citing 29 U.S.C. § 216(b)). To satisfy the third prong, the Third Circuit has adopted a "middle-ground approach," wherein plaintiffs are not required to identify exact dates and times in which they worked overtime to defeat a motion to dismiss. *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014). Plaintiffs must, however, "provide sufficient detail about the length and frequency of their unpaid work to support a reasonable inference that they worked more than forty hours in a given week." *Id.* at 243 (internal citations omitted).

Plaintiff cannot establish the third FLSA *prima facie* prong because there are no allegations to support a reasonable inference that he worked more than forty hours per week plus overtime. In fact, Plaintiff expressly disclaims that he worked overtime hours for Oaks' RIST pre-furlough (although he inquired about working overtime hours) and admits that post-furlough, he only worked part-time. [*See* Lead Compl. ¶¶ 2–3, 5.] Accordingly, his FLSA claim is dismissed.

### C. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining State Law Claims

The Court declines to exercise supplemental jurisdiction over the remainder of Plaintiff's state law claims having now dismissed Plaintiff's federal Title VII and FLSA claims. *See* 28 U.S.C. § 1367(c)(3); *see also Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court."). The Court finds that considerations of judicial economy, convenience, and fairness to the parties do not provide an affirmative justification for retaining jurisdiction here. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) (explaining that when "all federal-law claims have been eliminated before trial, the balance of factors to be considered under the pendant jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state law claims"). With all federal claims dismissed, the Court will

decline to exercise supplemental jurisdiction over Plaintiff's NJLAD and NJCROA claims.

### D. Dismissal is With Prejudice

Although courts must generally permit a plaintiff to file a curative amendment when granting a Rule 12(b)(6) motion to dismiss, *Phillips*, 515 F.3d at 245, the Court is not required to do so when "such an amendment would be inequitable or futile," *id*. Here, permitting Plaintiff the opportunity to amend the Complaint would be both inequitable and futile. As to Plaintiff's Title VII claims, amendment would be futile because, as described above, Plaintiff filed his suits outside the ninety-day right-to-sue period. As to Plaintiff's FLSA claims, he has already disclaimed that he worked overtime hours pre- and post-furlough. [Lead Compl. ¶¶ 2–3, 5]. Finally, the Court has already consolidated Plaintiff's second-filed complaint with his first-filed complaint which effectively supplemented the allegations of the first-filed complaint. Moreover, the Court allowed Plaintiff to file a statement clarifying his claims in response to the Court's order to show cause. Both the consolidation and Plaintiff's statement further clarifying his claims provided him with some benefits of a curative amendment. *Rusciano v. Atl. City*, 2021 WL 1138151, at *2 (D.N.J. Mar. 24, 2021) (dismissing with prejudice where Court permitted Plaintiff to file a statement clarifying his claims). Accordingly, the Complaint will be dismissed with prejudice.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Amended Motion to Dismiss is **GRANTED** and the Complaints **DISMISSED WITH PREJUDICE**. An accompanying Order shall issue.

**April 2, 2024**  
Date

s/Renée Marie Bumb  
RENÉE MARIE BUMB  
Chief United States District Judge